**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **SANDY HUVAL DEVILLIER** | **CASE NO.  6:20-CV-01631** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **ANDREW M SAUL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Sandy Devillier, fully exhausted her administrative remedies prior to filing this action in federal court.  The claimant filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on January 1, 2016.[1]  Her applications were denied.  The claimant requested a hearing,[2] which was held on May 26, 2020 before Administrative Law Judge Luke Liter.[3]  The ALJ issued a

---

[1]    Rec. Doc. 11 at 10.

[2]    Rec. Doc. 11 at 144-51.

[3]    The hearing transcript is found at Rec. Doc. 11 at 29-57.

1

decision on June 8, 2020,[4] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from January 1, 2016 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on October 19, 2020 that no basis existed for review of the ALJ's decision.[5]    Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on December 20, 1972.[6]  At the time of the ALJ's decision, she was 47 years old.  She has a high school education and past relevant work experience as a purchasing agent.[7]  She alleges that she has been disabled since January 1, 2016 due to Crohn's disease, depression, and anxiety.[8]

---

[4]    Rec. Doc. 11 at 10-23.

[5]    Rec. Doc. 11 at 1-3.

[6]    Rec. Doc. 11 at 36.

[7]    Rec. Doc. 11 at 22.

[8]    Rec. Doc. 11 at 231.

# ANALYSIS

## A.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[9]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[11]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[12]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-

---

[9]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[10]    *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[11]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[12]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

weighing the evidence or substituting its judgment for that of the Commissioner.[13] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[14]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[15]

## B.  <u>Entitlement to Benefits</u>

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[16]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[17]

---

[13]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[14]    *Martinez v. Chater*, 64 F.3d at 174.

[15]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[16]    See 42 U.S.C. § 423(a).

[17]    42 U.S.C. § 1382(a)(1) & (2).

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[18]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[19]

## C.    <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other

---

[18]    42 U.S.C. § 1382c(a)(3)(A).

[19]    42 U.S.C. § 1382c(a)(3)(B).

5

work at step five.[20]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[21]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[22] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[23]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[24]

The claimant bears the burden of proof on the first four steps.[25]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[20]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[21]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[22]     20 C.F.R. § 404.1520(a)(4).

[23]     20 C.F.R. § 404.1545(a)(1).

[24]     20 C.F.R. § 404.1520(e).

[25]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

perform other substantial work in the national economy.[26]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[27]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[28]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[29]

## D.    THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined that the claimant meets the insured status requirements of the Social Security Act through December 31, 2019.  The ALJ further determined, at step one, that the claimant has not engaged in substantial gainful activity since January 1, 2016.[30]  This finding is supported by the evidence in the record.

---

[26]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[27]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[28]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]     *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[30]     Rec. Doc. 11 at 13.

At step two, the ALJ found that the claimant has the following severe impairments: Crohn's disease, depression, and anxiety as of August 8, 2018, but that prior thereto, there are no medically determinable impairments.[31]   The claimant challenges this finding.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[32]   The claimant does not specifically challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform less than the full range of light work with the following limitations: can sit for six hours out of an eight-hour workday; can stand or walk a combined total of six hours out of an eight-hour day; can understand, remember, and carry out simple routine tasks; can tolerate occasional contact with co-workers; can tolerate incidental contact with the public; and can tolerate standard levels of supervision.[33]   The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing her past relevant work.[34]

---

[31]     Rec. Doc. 11 at 13.

[32]     Rec. Doc. 11 at 13.

[33]     Rec. Doc. 11 at 15.

[34]     Rec. Doc. 11 at 22.

At step five, the ALJ found that the claimant was not disabled from January 1, 2016 through June 8, 2020 (the date of the decision) because there are jobs in the national economy that she can perform.[35]  The claimant challenges this finding.

## E.    THE ALLEGATIONS OF ERROR

The claimant alleges the following errors by the ALJ:

1.    The ALJ erred in concluding that the claimant can perform the activities identified by the residual functional capacity on a regular and continuous basis, and in making no allowance for the claimant's need for unscheduled breaks due to constant diarrhea; and

2.    The claimant could not afford medical treatment at times and stopped taking her medicine for Crohn's due to conflicting medical disagreement; both circumstances constitute acceptable "good cause" for not following prescribed treatment.

## ANALYSIS

## 1.    The claimant's bowel issues

The claimant testified that she was diagnosed with Crohn's disease in 1995 but was unable to seek continuous treatment at that time because she did not have insurance and could not afford it.  The first medical records are dated August 2018, when the claimant went to the emergency room complaining of 30 watery bowel movements per day.[36]  At that time, the claimant reported that she had had no flare-

---

[35]    Rec. Doc. 11 at 22-23.

[36]    Rec. Doc. 11 at 294.

ups in the last 10 years, but that she had not followed up with a gastroenterologist in many years.[37]  Her examining physician noted that recent labs taken on August 3, 2018 were remarkable only for an iron deficiency and a Vitamin A deficiency. Examination of her abdomen was also unremarkable.[38]  A colonoscopy showed a stricture of a previous ileocolic anastomosis site; she was prescribed steroids and was told that surgery would be needed to repair the stricture.   The claimant underwent a laparotomy on August 27, 2018, which repaired the stricture, and her postoperative recovery was uneventful.[39]  Medical notes from the surgery report that the claimant showed signs of mild colitis.[40]  On September 12, 2018, the claimant reported decreased bloating and abdominal pain, but reported copious diarrhea.[41] The claimant was then seen on November 13, 2018 for follow-up, where she reported that she had been prescribed Remicade and iron infusions, and she was advised to increase her Lomotil dose.   At that exam, the doctor noted his belief that a

---

[37]    *Id.*

[38]    Rec. Doc. 11 at 299, 356, 260-62.

[39]    Rec. Doc. 11 at 346.

[40]    Rec. Doc. 11 at 376.

[41]    Rec. Doc. 11 at 670.

"significant part of her diarrhea is due to her prior small bowel resections and perhaps bile salt induced given cholecystectomy."[42]

On December 8, 2018, the claimant went to the emergency room with complaints of abdominal pain and vomiting; she was diagnosed with a Crohn's flare and was prescribed medication. At a follow-up appointment on December 14, 2018, the examining physician noted that the claimant reported only residual diarrhea and no severe abdominal pain.[43] At that time the claimant was diagnosed with situational depression, Crohn's disease, and anemia.[44]

On January 22, 2019, the claimant had a Mediport placed for Remicade treatments.[45] On April 24, 2019, the claimant went to the hospital complaining of progressing abdominal pain. Although she reported chronic diarrhea, with 20 stools per day, it was reported that her weight was stable. However, labs were significant for decreased potassium and a CT showed mild colitis. The claimant was started on IV steroids. The doctor who examined her reported that her diarrhea was likely

---

[42]     Rec. Doc. 11 at 404.

[43]     Rec. Doc. 11 at 396.

[44]     Rec. Doc. 11 at 402.

[45]     Rec. Doc. 11 at 462.

11

attributable to multiple abdominal surgeries and not due to an active Crohn's disease component.[46]

At a follow up visit on May 1, 2018, the claimant reported residual diarrhea, but her abdominal pain had resolved.  On May 29, 2019, the claimant stated she had been told she is allergic to Remicade and she stopped taking this medication.  On June 8, 2019, the claimant went to the emergency room with complaints of right lower quadrant pain and complained of 30 bowel movements per day.  She was treated for a Crohn's flare with Zofran and Dilaudid.[47]  There are no medical records after this report.

### 2.    The claimant's depression and anxiety

The medical records provided by the claimant show that she has never received any actual mental health treatment, other than a visit with a hospice care worker after the death of her mother;[48] rather, she was seen for her Crohn's disease, and her alleged depression and anxiety were sometimes addressed during those visits.  Over the course of the year of treatment for which medical records have been provided, the records show that the claimant did report anxiety and depression to her

---

[46]    Rec. Doc. 440-47.

[47]    Rec. Doc. 11 at 500-09.

[48]    Rec. Doc. 11 at 487.

doctors.  She was treated variously with Cymbalta and Vistaril for depression and anxiety.

On December 17, 2018, the claimant was examined by Dr. Alfred Buxton, a psychological consultative examiner, who reported that the claimant's intellectual functioning was within normal limits; her judgment was good, as was her reasoning, insight, and reflective cognition.[49]   The claimant had no evidence of any hallucination or delusional phenomena, and she was not easily upset.[50]  Dr. Buxton reported that the claimant was alert, responsive, and oriented in all four spheres.[51] Dr. Buxton assessed the claimant with a GAF of 50-55 and noted that she had Dysthymic Disorder and Anxiety Disorder over the last 12 months.[52]

### 3.    RFC

The ALJ determined that the claimant has the residual functional capacity to perform less than the full range of light work with the following limitations: can sit for six hours out of an eight-hour workday; can stand or walk a combined total of six hours out of an eight-hour day; can understand, remember, and carry out simple

---

[49]    Rec. Doc. 11 at 392-94.

[50]    *Id.*

[51]    *Id.*

[52]    *Id.*

routine tasks; can tolerate occasional contact with co-workers; can tolerate incidental contact with the public; and can tolerate standard levels of supervision.[53]

After review of the record, the undersigned finds that the ALJ properly assessed the claimant's RFC with respect to her physical and mental impairments by considering all of the relevant evidence, including the opinions of examining and non-examining physicians, as well as the combination of all of her alleged impairments. He carefully reviewed the objective medical evidence and specifically acknowledged that in making the RFC assessment, he considered all of the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. Thus, the undersigned concludes that the ALJ applied the proper legal standards in determining the claimant's RFC.

The crux of the claimant's argument is that the ALJ erred in finding that she is capable of light work despite her severe impairments, and specifically, in light of her near-constant diarrhea, which borders on incontinence. At her administrative hearing, the claimant testified that she has had more than 40 colonoscopy procedures, and that she takes approximately 30 restroom breaks a day.[54] As part of

---

[53]    Rec. Doc. 11 at 15.

[54]    Rec. Doc. 11 at 39.

her application for benefits, in her "Function Report, the claimant reported that each bathroom break takes about 10 minutes, and after each bathroom break, she has to rest for 15 minutes.[55]   As the Commissioner noted in its brief, the claimant's bathroom breaks and subsequent rest periods consume approximately 12.5 hours of each day.   Despite this testimony, the claimant's medical records show only 10 months of actual treatment for her bowel-related issues, from August 2018 through June 2019.

The claimant argues that she did not seek treatment before 2018 because she could not afford it.   However, when asked why she had not sought treatment after June 2019 – the year before her administrative hearing, and a time when the claimant had Medicaid – the claimant testified that she was too embarrassed.[56]   The ALJ determined that the claimant's failure to seek or obtain medical attention is not consistent with a chronic and worsening medical condition, noting that it is reasonable to assume the claimant would have exhausted every means possible to obtain relief from the symptoms she reported, if they were truly as severe as she alleged.

---

[55]      Rec. Doc. 11 at 258.

[56]      Rec. Doc. 11 at 43.

The ALJ further noted that there were few records showing objective medical support for her allegations.  For example, despite the claimant's testimony that she eats very little and has diarrhea thirty times a day, there are no records showing malnutrition or decreased weight.  Rather, the majority of the claimant's records showed that her weight was stable and she appeared well-nourished.[57]

With respect to her mental impairments, the claimant does not specifically challenge the ALJ's findings with respect to Listing 12.04 and 12.06, rather, she argues that the ALJ's RFC assessment does not adequately take into account Dr. Buxton's remarks that "[t]he accumulation of frustration and stress she would encounter in the job setting may lead to some exacerbation in the Dysthymia and Anxiety as well as might exacerbate some of the [Crohn's] symptoms."[58]

Review of the record shows that the ALJ properly considered the claimant's mental impairments when assessing the claimant's RFC.  The ALJ specifically considered Listing 12.04 and 12.06, and specifically considered the Paragraph B criteria[59] of each listing.  Here, the ALJ determined the claimant does not meet or

---

[57]    *See* Defendant's Response Brief, Doc. 14 at n. 5, wherein the Commissioner lists the weight of the claimant throughout her treatment and doctors' notes indicating lack of malnourishment.

[58]    Rec. Doc. 11 at 394.

[59]    *See, e.g., Mcgowan v. Saul*, 2021 WL 799325, at *3–4 (S.D. Tex. Jan. 6, 2021), *report and recommendation adopted*, 2021 WL 951859 (S.D. Tex. Mar. 10, 2021), in which the court noted:

equal the relevant listing criteria, because the claimant does not satisfy paragraph B

requirements, as she has only "mild" or "moderate" limitations in each of the four

areas of mental functioning, rather than marked or extreme limitations as required.

The claimant does not challenge this finding but argues the ALJ "played doctor" by

---

Listing 12.04 provides the criteria for depressive, bipolar, and related disorders and Listing 12.06 provides the criteria for anxiety and obsessive-compulsive disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04 & 12.06. Both listings are divided into paragraphs A, B, and C: paragraph A describes the medical diagnoses and symptoms that must be present in the record; paragraph B outlines four categories of mental functioning used to evaluate a claimant's work limitations caused by the disorder; and paragraph C outlines the criteria used to determine whether the mental disorder is serious and persistent. *Id.* § 12.00(A)(2). In other words, "[t]he criteria in paragraph A substantiate medically the presence of a particular mental disorder" and "[t]he criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Willingham v. Comm'r of Soc. Sec. Admin.*, No. 12-CV-242, 2014 WL 1050286, at *3 n.3 (E.D. Tex. Mar. 14, 2014) (quotations omitted). To meet either Listing 12.04 or 12.06, a claimant must satisfy the requirements of paragraphs A and B or paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2); *Baker v. Berryhill*, No. 18-CV-686, 2019 WL 4418439, at *4 (N.D. Tex. Apr. 11, 2019), *report and recommendation adopted*, 2019 WL 2865045 (July 3, 2019).

Paragraph B requires a claimant to exhibit extreme limitation in one area or marked limitation in two areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2)(b). An extreme limitation exists when a claimant is unable to function independently, appropriately, effectively, and on a sustained basis, and a marked limitation exists when a claimant is seriously limited in these areas. *Id.* § 12.00(F)(2). Paragraph C requires a claimant to show a medically documented history of the disorder for at least two years, reliance on medical treatment to diminish symptoms, and only marginal adjustment to the requirements of daily life— *i.e.*, the claimant has "minimal capacity to adapt to changes in ... environment." *Id.* § 12.00(G); *see also id.* § 12.00(A)(2)(c).

ignoring the import of Dr. Buxton's suggestion that working can exacerbate the claimant's mental impairments.

For context, Dr. Buxton reported the following:

> Outpatient mental health intervention to deal with the Dysthymia, the Anxiety, and her pain complaints would be appropriate. Continued medical monitoring and management of her Crohn's diseases would be appropriate. The G.A.F. score is 50-55 with the rating period being over the last 12 months. She is bright enough she can understand simple as well as complex instruction and command. The primary obstacle or barrier towards her performing in a reliable and dependable fashion, even for brief intervals of time, apparently is the severity of her Crohn's disease leading to frequent fecal elimination that by its self-report borders on incontinence. The accumulation of frustration and stress she would encounter in the job setting may lead to some exacerbation in the Dysthymia and Anxiety as well as might exacerbate some of the [Crohn's] symptoms. She is a friendly enough individual and probably could establish and maintain mutual rewarding relationships with coworkers and supervisors alike. . .[60]

Dr. Buxton did not opine that the claimant's mental impairments limit her functioning so much that she is unable to work. In fact, Dr. Buxton reported that the claimant, despite her mental impairments, can perform work tasks and maintain relationships in the workplace. Dr. Buxton's assessment is consistent with the Disability Determination Explanations of both Dr. James D. Crout and Dr. Hollis T. Rogers, who opined that the claimant is not disabled.[61] Considering the foregoing,

---

[60]    Rec. Doc. 11 at Tr. 393-94.

[61]    Rec. Doc. 11 at 74-85 and 109-27.

and further considering the lack of medical evidence supporting the need for the breaks the claimant argues she would need if she worked, the claimant's argument that Dr. Buxton's opinion lends support to her claim for disability is unpersuasive.

After a review of the entirety of the record, the undersigned concludes that substantial evidence in the record supports the ALJ's findings. The ALJ did not disregard the claimant's statements about the intensity, persistence, and limiting effects of her symptoms solely because the objective medical evidence does not substantiate the degree of her alleged impairment-related symptoms, as was proper under SSR 16-3p, 2016 WL 1119029, *4. Rather, the ALJ properly considered other evidence, including the lack of consistent treatment over the years and evidence showing the measures the claimant has taken to alleviate her symptoms.[62] In that context, the ALJ noted that the claimant had discontinued medications and had not seen a doctor or visited a hospital emergency room in the year preceding the administrative hearing, despite coverage under Medicaid.[63] It was permissible for the ALJ to find the claimant's subjective claims inconsistent with her lapse in medical treatment.[64]

---

[62]    SSR 16-3p, 2016 WL 1119029, *8.

[63]    Rec. Doc. 11 at 16, 20.

[64]    *See Palomo v. Barnhart*, 154 F. App'x 426, 430 (5th Cir. 2005); *Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986) (evidence of sparse treatment may provide a proper basis for determining that a claimant's symptoms are not disabling).

## CONCLUSION AND RECOMMENDATION

Considering the foregoing, the undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 19th day of July, 2022.

_____
Carol B. Whitehurst
United States Magistrate Judge